UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

APRIL and JOHN HARROWER, as next
friends of J.H.1, et al.,

     Plaintiffs,

v.

EASTLAND INDEPENDENT SCHOOL
DISTRICT, et al.,

     Defendants.

No. 1:24-CV-168-H

## MEMORANDUM OPINION AND ORDER

Two high school students (J.H.1 and J.H.2) and their parents and stepparent (the

Harrowers and the Hickses) filed suit against Eastland Independent School District (EISD)

and several EISD school board members and school administrators: Jeremy Williams, Mary

Jones, Adam Bramlett, Brent Kirkland, Donald Cate, John Bird, Kimberly Fullen, Kalli

Stacy, David Hatton, and Jim Moylan, Jr. (the individual defendants).  The plaintiffs claim

that EISD and the individual defendants discriminated against the minor-plaintiffs on the

basis of their sex by allowing and failing to respond properly to student-on-student sexual

harassment by members of the boys' varsity basketball team.

The plaintiffs filed suit against all defendants pursuant to Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and against the individual defendants

pursuant to 42 U.S.C. § 1983 (Section 1983) for violation of the Fourteenth Amendment's

Equal Protection Clause, U.S. Const. amend. XIV, § 1.  The defendants moved to dismiss

all claims (Dkt. No. 25).  The Court dismisses all equal-protection claims and all Title IX

claims except the minor-plaintiffs' Title IX claims against EISD.  Additionally, the Court

denies J.H.1 and the Harrowers' motion for a preliminary injunction as moot.

1.     **Factual Background and Procedural History**

     A.     **Factual Background[1]**

          i.     **J.H.1's and J.H.2's Allegations of Sexual Misconduct**

Plaintiffs J.H.1 and J.H.2 are both minors who, at the time of the alleged incidents, were 16-year-old high school students at EISD and the newest members of the varsity boys' basketball team. Dkt. No. 1 ¶¶ 22–23. Plaintiffs April and John Harrower are J.H.1's parents, and Plaintiff Jeromy John Hicks is J.H.2's father. *Id.* ¶¶ 2–3, 6. Plaintiff Melanie Hicks is J.H.2's stepmother. *Id.* ¶ 5.

The plaintiffs allege that various instances of sexual assault and harassment of J.H.1 and J.H.2 by four other members of the basketball team occurred during the 2023–2024 basketball season as part of continuing a "tradition" started by the team during the 2022–2023 season. *Id.* ¶ 28. According to the plaintiffs, one of the older players would give the younger or newer players a "good luck charm" by rubbing his penis on the face or head of the player. *Id.* "It is believed coaching staff, if not the administration, knew of this 'tradition' in 2022 or before," but failed to put a stop to it. *Id.* ¶¶ 29, 31.

With respect to the minor-plaintiffs, the first instance occurred on November 23, 2023, when the basketball team was unsupervised in a locker room at an away game. *Id.* ¶¶ 22, 24. An 18-yr-old senior player, Student 3, "targeted" both J.H.1 and J.H.2 by "announcing his intent to give [them] a 'good luck charm'" in the locker room in front of

---

[1] The factual allegations are taken from the plaintiff's first amended complaint (Dkt. No. 7), which the Court accepts as true when resolving a motion to dismiss. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). Additionally, because many of the allegations are made by and against minors, the Court refers to the minor-plaintiffs as J.H.1 and J.H.2, the four alleged aggressors as Student 1, Student 2, Student 3, and Student 4, and the student who filmed and shared the video of one of the incidents as Student 5.

the other players. *Id.* ¶¶ 24, 26. J.H.1 declined to participate, so Student 3 and another player, Student 1, targeted J.H.2. *Id.* ¶¶ 32–33. These two students rubbed their penises on J.H.2's face while he covered it with his hands, and Student 5 filmed the incident. *Id.* ¶¶ 34, 35, 88. Meanwhile, Student 4 rubbed his penis on the bare back of J.H.1 after he voiced his opposition to receiving a "good luck charm." *Id.* ¶ 36. Shortly thereafter, Student 5 posted the video of J.H.2 on the team's SnapChat group. *Id.* ¶ 39.

The second incident occurred at the next away basketball game on November 30. *Id.* ¶ 45. J.H.1 again refused to participate in the "good luck charm," and Student 3 again "proceeded to give [J.H.2] a 'good luck charm' . . . in the same manner that [he] had done" in the first incident. *Id.* ¶ 48. Then, Students 1 and 2 cornered J.H.1 as he was exiting a bathroom, "grabbed [him,] and forced him to the floor." *Id.* ¶¶ 48–49. Student 2 held J.H.1 down while Student 1 "dry humped" him and laughed. *Id.* ¶¶ 49–50. Other members of the basketball team witnessed this incident. *Id.* ¶ 51.

In addition to these two incidents, the plaintiffs aver that other "[s]exually based incidents" frequently occurred among members of the basketball team, often in front of coaches. *Id.* ¶ 54. For example, "team members [would] hit[] the genitals of another boy to embarrass, demean, and hurt him . . . constantly during practices" in front of the coaches. *Id.* The coaches would "occasionally" correct the boys when these incidents occurred, but they "failed to investigate these early warning signs." *Id.* Additionally, on bus rides to and from away games, the older basketball players "made constant verbal threats and comments" to the minor-plaintiffs about the "good luck charm," and one player told J.H.2 that Student 1 would force J.H.2 to engage in sodomy as part of his initiation. *Id.* ¶¶ 56–59. The coaches heard these verbal threats but "did nothing to correct or stop such behavior."

– 3 –

*Id.* ¶ 60. In addition to these events, prior to the 2023–2024 basketball season, "on October 27, 2023, Student 1 removed his penis from his clothing and rubbed [it] on the head or hair of [J.H.2], while [he] was seated and looking in the opposite direction." *Id.* ¶ 88.

### ii.   EISD's Response to the Allegations of Sexual Misconduct

On January 18, plaintiff Melanie Hicks, J.H.2's stepmother, reported the incidents to EISD. *See id.* ¶ 66. That same day, defendant Principal Bramlett and the athletic director, Morton, interviewed all of the basketball players about the alleged acts of sexual misconduct against J.H.2. *Id.* Although J.H.1 was "reluctant" to discuss the incidents involving himself, he confirmed that he observed the incidents of sexual misconduct involving J.H.2. *Id.* ¶ 67. That same day, the school board held a session to discuss the incidents involving J.H.2. *Id.* ¶ 62. According to the plaintiffs, the school administrators and board members "saw the video [of J.H.2 that was posted to SnapChat], had access to this video, and discussed the contents of the video" at a school board meeting. *Id.* ¶¶ 40–41. However, no one from the school asked the student who filmed the incident to delete the video. *Id.* ¶ 43.

During the meeting, EISD board members and staff discussed that J.H.1 was "a likely victim of hazing and sexual assault" but never notified J.H.1's parents. *Id.* ¶¶ 63–64. Despite EISD's alleged knowledge of the incidents against J.H.1, it permitted J.H.1 and the alleged aggressors to attend basketball practice and did not take steps to separate J.H.1 from the students who allegedly assaulted him. *Id.* ¶¶ 68–69. The following day, J.H.1 "made his own admission and outcry statement" to his parents about the alleged sexual misconduct. *Id.* ¶ 70.

Also on January 19, defendant Superintendent Williams acknowledged in a meeting with Melanie Hicks that the hazing and sexual misconduct were a "systemic problem." *Id.*

$-4-$

¶ 71. That same day, four of the alleged aggressors were placed in the Disciplinary Alternative Education Program (DAEP) for two to four weeks. *Id.* ¶ 72.

Following the students' time at DAEP, EISD began an external Title IX investigation into the hazing and sexual misconduct between members of the varsity basketball team during the 2023–2024 basketball season. *Id.* ¶ 75. On February 9 and 15, the Harrowers and Hickses filed their Title IX complaints. *Id.* ¶¶ 83–84. In response, EISD hired an external investigator on February 21. *Id.* ¶ 85. The investigation concluded on February 27 and found by a preponderance of the evidence that "all five of the perpetrators . . . committed 3–6 infractions each." *Id.* ¶ 88. In particular, the investigator confirmed the incidents of sexual harassment and sexual misconduct by Students 1, 2, 3, 4, and 5 against J.H.1 and J.H.2. *Id.* Additionally, the investigator confirmed that Student 5, who recorded and shared the video of J.H.2, and Student 4, who rubbed his bare penis on the back of J.H.1 after he declined the "good luck charm," engaged in hazing. *Id.* The Texas Rangers also conducted criminal investigations into the incidents of sexual misconduct. *Id.* ¶ 89.

Following the formal investigation, EISD and the plaintiffs engaged in an informal Title IX resolution process. *Id.* ¶ 134; *see also* Dkt. No. 32 at 7. During the informal resolution process that occurred from March 4–8, Superintendent Williams assigned himself as the mediator and "made repeated statements to the victim's families [that he lacked] a basic understanding of Title IX requirements." *Id.* ¶¶ 132, 134–35. On March 8, three of the students who engaged in sexual misconduct with J.H.1 and J.H.2 withdrew from EISD. Dkt. No. 1 ¶ 92. One of these students then went to an EISD gym "to intimidate" J.H.1 and J.H.2. *Id.* ¶ 96. While at the gym, three EISD coaches engaged the student in

conversation "while knowing full well that he was supposed to be isolated . . . and not allowed to intermingle with the two minor victims." *Id.* ¶ 97, 107. As a result, J.H.1 and J.H.2 sought and procured temporary protective orders against the three students who had withdrawn from EISD in an effort to prevent retaliation against them for speaking out about the sexual misconduct and hazing. *Id.* ¶¶ 98–99.

### iii.   The defendants' misconduct during the Title IX investigation

The plaintiffs allege that, throughout the Title IX investigation, Superintendent Williams and "other school officials undermined and deliberately subverted the processes." *Id.* ¶ 77. More specifically, the Title IX coordinator, defendant Jones, failed to appoint a qualified Title IX mediator, failed to notify the Harrowers of the incidents involving J.H.1, failed "to follow [the] Title IX formal complaint process," and allowed "disciplinary sanctions against the 5 perpetrators before the Title IX investigation commenced." *Id.* ¶ 81. Also during the investigation, Superintendent Williams, Principal Bramlett, and Athletic Director Morton allegedly made false statements that the aggressors were "placed in 'interim support measures' . . . despite the fact that they were placed directly in DAEP punishment." *Id.* ¶ 86.

Moreover, "[u]pon information and belief," Superintendent Williams advised the families of the three students who withdrew "that if they withdrew their children from [EISD] that the Title IX process would be placed on hold and would not follow the perpetrators to their new schools." *Id.* ¶ 93. And also "[u]pon information and belief, one or more [of the defendants] have facilitated the perpetrators['] acceptance into athletic or academic programs at other [schools]" by "authorizing and falsifying government documents issued to Cisco ISD and Vernon ISD" regarding two of the students who

– 6 –

withdrew that "allow[ed] these students to continue to play sports at their new schools." *Id.*
¶¶ 95, 138.

Furthermore, the plaintiffs allege that school leadership and board members
retaliated against J.H.1 and J.H.2 by: (1) hosting some of the perpetrators in the principal's
home for breakfast, *id.* ¶ 102–03; (2) allowing their children to attend an event organized by
the perpetrators and their families in an effort to compete with the school-sanctioned prom
that was organized by J.H.1, *id.* ¶¶ 101, 104; and (3) excluding J.H.1 and J.H.2 from
spring-league basketball games, which began after the regular season ended, *id.* ¶¶ 105–06.

According to the plaintiffs, as a result of the sexual misconduct and hazing, the
minors and their families suffered negative consequences. Both minors and their siblings
sought counseling. *Id.* ¶¶ 114–17. J.H.2 decided not to play basketball after the regular
season ended, had difficulty focusing on schoolwork, causing his grades to fall, and
experienced suicidal thoughts. *Id.* ¶¶ 111, 113, 118. Eventually, the Hicks family relocated
"for the mental well-being of [J.H.2]." *Id.* ¶ 112.

### iv.    J.H.1's allegations of retaliation following this suit

On September 27, 2024, the plaintiffs filed this suit. *See generally* Dkt. No. 1. Five
days later, on October 2, Principal Bramlett informed J.H.1 that he was barred from
speaking at his graduation on May 23, 2025, due to his conduct at the EISD 2024
graduation. Dkt. Nos. 32 at 8; 32-1 ¶¶ 6–7.

J.H.1 went off-script during his speech as Junior Class President at the 2024
graduation. *Id.*; *see also* Dkt. No. 32-1 ¶ 7. According to the plaintiffs, he was not advised
before his speech that he could not add any additional lines to the speech he was provided
by EISD. Dkt. No. 32-1 ¶ 9. During his speech, he attempted to quote Booker T.

– 7 –

Washington: "A lie doesn't become truth. Wrong doesn't become right. And [e]vil doesn't become good, [j]ust because it is accepted by a majority." *Id.* ¶ 11. Before J.H.1 finished this quote, Principal Bramlett and another administrator asked him to stop speaking and attend to his other graduation duties, and J.H.1 complied. *Id.* ¶ 12. Approximately five months later, J.H.1 was informed that this conduct violated an EISD board policy and the student code of conduct and, therefore, he was not allowed to speak at his 2025 graduation. Dkt. No. 32 at 8.

On March 17, 2025, upon the recommendation of Superintendent Williams and Principal Bramlett, the EISD school board voted to allow J.H.1 to speak at graduation. *See* Dkt. 40 at 2. On March 20, the school board informed the Harrowers that J.H.1 can give a preapproved valedictory speech at graduation. *Id.* at 3–4.

## B.    Procedural History

The precise timeline of events following the Title IX formal investigation and informal resolution process is unclear from the pleadings. At some point, the Harrowers and Hickses filed civil suits, but they withdrew them in April 2024 after the criminal investigation commenced. *Id.* ¶ 108. On June 23, John Harrower filed a level 3 grievance with the Eastland ISD school board, but it was dismissed as untimely on July 12. *Id.* ¶¶ 9–10. This suit followed. *See generally* Dkt. No. 1.

The plaintiffs assert that the defendants were deliberately indifferent to the student-on-student sexual harassment of J.H.1 and J.H.2 and created a hostile educational environment on the basis of their sex and in violation of Title IX. *See id.* ¶¶ 146–62. Additionally, the plaintiffs assert that the defendants had official policies and customs to discriminate against male student athletes at EISD in violation of Title IX. *Id.* ¶¶ 163–66.

– 8 –

The plaintiffs also allege Fourteenth Amendment equal-protection claims against the individual defendants, asserting that they discriminated against J.H.1 and J.H.2 by treating them differently than similarly situated individuals. *Id.* ¶¶ 167–70. Finally, the plaintiffs seek a permanent injunction enjoining the defendants from engaging in the violative conduct, and they seek various types of damages, including punitive damages and attorney's fees. *Id.* ¶¶ 171–72, 174.

The defendants filed a motion to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. No. 25). The plaintiffs responded (Dkt. No. 28), and the defendants replied (Dkt. No. 34). Additionally, after engaging in an unsuccessful grievance process with EISD, *see* Dkt. No. 32 at 9, the Harrowers filed a motion for a preliminary injunction asking the Court to enjoin EISD from barring J.H.1 from speaking at graduation (Dkt. No. 32). The defendants responded on March 21, 2025, and informed the Court that EISD had reversed their decision; J.H.1 would be allowed to give a preapproved valedictory address at his May 2025 graduation (Dkt. No. 39). The plaintiffs replied, requesting that the Court deny their motion for a preliminary injunction as moot (Dkt. No. 41). Both motions are now ripe for review.

## 2.    Motion to Dismiss

### A.    Legal Standards

#### i.    Rule 12(b)(1) Legal Standard

A party may challenge a court's subject-matter jurisdiction by a Rule 12(b)(1) motion to dismiss. Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When considering such a motion, "the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by

– 9 –

undisputed facts plus the court's resolution of disputed facts.'" *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The plaintiff, as the party asserting jurisdiction, "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. Thus, at the pleading stage, the plaintiff must "allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012). A defendant may make either a facial attack or a factual attack on subject-matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). For a facial attack, "the trial court is required merely to look to the sufficiency of the allegations of the complaint because they are presumed to be true." *Id.*

### ii.     Rule 12(b)(6) Legal Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

– 10 –

In resolving a motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (cleaned up) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But a court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of stating a plausible claim to relief. *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### B.    Analysis

The Court grants in part and denies in part the defendants' motion to dismiss.

First, the parties dispute whether all plaintiffs have correctly brought certain claims against the proper defendants in the proper capacity. Ultimately, the Court concludes that the parent-plaintiffs have properly brought the following claims as next friends of J.H.1 and J.H.2: (1) Title IX claims against EISD, and (2) equal-protection claims against the individual defendants in their official capacities. Thus, the Court dismisses with prejudice the following claims: (1) any claims asserted against the individual defendants in their personal capacities; (2) any claims for punitive and pure emotional-distress damages; (3) any claims brought by the parent-plaintiffs for violation of their own rights; (4) the Title IX claims against the individual plaintiffs in their official capacities; and (5) the plaintiffs' request for injunctive relief.

– 11 –

Having determined that only the minor-plaintiffs' Title IX claims against EISD and equal-protection claims against the individual defendants in their official capacities are proper, the Court turns to whether the plaintiffs have alleged facts that sufficiently state claims for relief. First, the Court concludes that the parent-plaintiffs, as next friends of the minor-plaintiffs, have sufficiently pled Title IX post-reporting deliberate-indifference and pre-reporting official-policy claims. Next, the Court concludes that the parent-plaintiffs, as next friends of the minor-plaintiffs, have not pled facts that state plausible equal-protection claims and dismisses these claims, but the Court grants the plaintiffs leave to amend.

### i.    Voluntary Dismissal

First, the Court dismisses any claims against the individual defendants in their personal capacities and any claims for punitive and emotional-distress damages. The plaintiffs concede in their response to the motion to dismiss that they are not pursuing these claims. Dkt. No. 28-1 at 7 n.1. Failure to pursue a claim beyond a complaint constitutes abandonment of that claim. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Thus, to the extent the complaint asserts these claims, the Court dismisses them with prejudice.

### ii.    Standing and Capacity

#### a.    The Court dismisses any individual claims filed by the parent-plaintiffs.

The defendants first assert that the parent-plaintiffs lack standing to bring individual claims under either Title IX or Section 1983. The Court agrees.

##### 1.    The parent-plaintiffs lack standing to bring Title IX claims.

The parties first dispute whether parents have standing to bring their own claims under Title IX for medical expenses incurred on behalf of their child due to the deprivation

– 12 –

of the child's rights under Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In the leading Fifth Circuit case, the court concluded that "nothing in the statutory language provides [a parent] with a personal claim under Title IX." *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1010 n.4 (5th Cir. 1996), *disapproved on other grounds by Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 637–38 (1999). The Fifth Circuit went on to state:

> Even assuming that Title IX protects persons other than students and employees, [the parent] has failed to assert that she was excluded from participation, denied the benefits of, or subjected to discrimination under any education program or activity. Absent such a claim, the plain language of Title IX does not support a cause of action by [the parent].

*Id.*

Following *Rowinsky*, district courts in the Fifth Circuit have routinely dismissed parents' Title IX claims without directly stating whether a parent can bring Title IX claims for medical expenses incurred on behalf of their minor child as a result of the Title IX violation. *See, e.g., A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 985 (S.D. Tex. 2014), *aff'd on other grounds sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) (dismissing the parents' Title IX claims because they did not allege that they incurred medical expenses as a result of the deprivation of their child's rights under Title IX while the student was a minor); *Doe v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-814, 2024 WL 1329916, at *3 (E.D. Tex. Mar. 27, 2024), *vacated in part on other grounds sub nom. Doe v. Ferguson*, 128 F.4th 727 (5th Cir. 2025) (dismissing the parents' Title IX claims because "Title IX does not permit parents to bring a personal claim because they are neither students

– 13 –

nor employees of the school" and because they did not allege deprivation of their own rights).[2]

The plaintiffs rely on a district court case from Pennsylvania, *Dipippa v. Union School District*, 819 F. Supp. 2d 435 (W.D. Pa. 2011), for the proposition that parents can bring a personal claim under Title IX to recover medical expenses incurred on behalf of their child. Dkt. No. 28-1 at 9–10. Although the *Dipippa* court recognized that a parent may recoup medical expenses incurred on behalf of a minor child, it expressly stated that parents do not have standing to assert personal claims but, rather, can assert claims on behalf of their children. *See Dipippa*, 819 F. Supp. 2d at 446; *see also, e.g., Haines v. Metro. Gov't*, 32 F. Supp. 2d 991, 1000 (M.D. Tenn. 1998) ("[T]he parents of a child suing under Title IX cannot bring an action to recoup such expenses unless suing on behalf of their daughter or son."); *McCoy v. Indep. Sch. Dist. No. 1*, No. 24-CV-263, 2025 WL 300693, at *4 & n.6 (N.D. Okla. Jan. 24, 2025) (same). Thus, this case is inapposite to the plaintiffs' position.

---

[2] *See also Monroe v. Aldine Indep. Sch. Dist.*, No. 4:24-CV-139, 2024 WL 3627777, at *3 (S.D. Tex. July 31, 2024) ("Parents cannot establish standing to pursue personal Title IX [claims] based on their children's injuries, but they can establish standing to assert the claims of their children as 'next friends.'"); *Moreno v. McAllen Indep. Sch. Dist.*, No. 7:15-CV-162, 2016 WL 1258410, at *9 & n.103 (S.D. Tex. Mar. 31, 2016) (finding, under *Rowinsky*, that a parent does not have standing to bring Title IX claims); *Doe v. Ennis Indep. Sch. Dist.*, No. 3:05-CV-1999, 2007 WL 273550, at *8 (N.D. Tex. Jan. 31, 2007) (collecting cases that declined to extend Title IX protection to parents and next friends of minors) ("The [parents] have not claimed that they personally benefitted from or participated in the educational opportunities provided by E.I.S.D."); *Doe v. Bridgeport Indep. Sch. Dist.*, No. 3:94-CV-1889, 1996 WL 734949, at *2 (N.D. Tex. Dec. 11, 1996) (finding that a parent "does not have standing to assert a personal claim under Title IX"); *cf. Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 252 (5th Cir. 1997) (holding that employees of federally funded educational institutions may bring a retaliation claim under Title IX).

– 14 –

Additionally, the plaintiffs claim that the parent-plaintiffs can assert Title IX claims for the alleged retaliation they experienced after reporting the sexual misconduct. Dkt. No. 28-1 at 10. However, the complaint states that the parents complained to the school about the misconduct, but it alleges no facts about retaliation experienced by the parents; all allegations of retaliation pertain to the minor-plaintiffs. *See* Dkt. No. 1 ¶¶ 42, 74.

In short, the parent-plaintiffs have failed to plead personal Title IX claims—for medical expenses or otherwise—because they have failed to plead any facts that, taken as true, allege that they were "excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination under any education program or activity" of EISD. 20 U.S.C. § 1681(a). Rather, they plead facts related only to the alleged deprivation of J.H.1's and J.H.2's rights under Title IX. *See* Dkt. No. 1 ¶¶ 61, 100–06, 111–15, 118–19, 137, 139–42, 145, 146–66. Accordingly, because the plain language of the statute does not afford the parents of minors alleging deprivation of rights under Title IX a cause of action separate from their children's and, even if it did, the parents have not alleged deprivation of their own rights under Title IX, the Court concludes that April Harrower, John Harrower, Melanie Hicks, and Jeromy John Hicks lack standing to bring personal Title IX claims. The Court dismisses these claims with prejudice.

### 2.    The parent-plaintiffs lack standing to bring equal-protection claims under Section 1983.

Similar to Title IX claims, the parent-plaintiffs lack standing to bring their own equal-protection claims pursuant to Section 1983. The equal-protection claims appear to be asserted by all of the plaintiffs, and the parent-plaintiffs state in their response that they "have third-party standing to bring their claims under [Section] 1983." Dkt. No. 28-1 at 10.

– 15 –

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). A party asserting the deprivation of a constitutional right is "required to prove some violation of their personal rights." *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986); *see also Hart ex rel. S.H. v. Midland Indep. Sch. Dist.*, No. 24-CV-131, 2025 WL 325270, at *6 (W.D. Tex. Jan. 13, 2025), *report and recommendation adopted sub nom. Hart v. Midland Indep. Sch. Dist.*, 2025 WL 322282 (W.D. Tex. Jan. 28, 2025) (collecting cases and dismissing parents' Section 1983 claims for lack of standing because they failed to assert injuries or a deprivation of rights separate from those of their children).

The parent-plaintiffs do not allege deprivation of their own constitutional rights. Instead, the parent-plaintiffs appear to assert equal-protection claims on behalf of their children for the alleged violation of the children's constitutional rights. *See* Dkt. Nos. 1 ¶¶ 167–70; 28-1 at 10. Thus, to the extent the parent-plaintiffs assert personal claims under Section 1983, the Court dismisses these claims for lack of standing because they do not allege deprivation of their own rights. *Coon*, 780 F.2d at 1160.

> **b.** **The Court concludes that the minor-plaintiffs' parents have properly asserted Title IX and Section 1983 claims on behalf of J.H.1 and J.H.2.**

The defendants next ask that the Court dismiss all of the minor-plaintiffs' claims

pursuant to Rule 12(b)(1)[3] because, as minors, they lack the capacity to sue. Dkt. No. 25 at

20. The plaintiffs argue that, although the petition does not clearly state that the

parent-plaintiffs are suing on behalf of their children, they have the right to do so under

federal and Texas law. Dkt. No. 28-1 at 8–9, 11. The Court agrees.[4]

Federal Rule of Civil Procedure 17 permits a guardian to sue on behalf of a minor.

Fed. R. Civ. P. 17(c)(1). And, if a minor does not have an appropriate representative, a

district court must enter an "appropriate order" to "protect a minor . . . who is

unrepresented." *Id.* (c)(2). However, "[a]s a general matter, 'a federal court cannot appoint

a [representative] in an action in which the infant or incompetent already is represented by

someone who is considered appropriate under the law of the forum state.'" *Arndt v. Wells

Fargo Bank NA*, 373 F. Supp. 3d 701, 708 (N.D. Tex. 2016) (quoting *Rice ex rel. CIR v.*

---

[3] The Fifth Circuit has made clear that "whether the claimant is authorized to prosecute the claim on behalf of the actual owner . . . is a waivable capacity problem, not a jurisdictional standing problem." *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 160, 163 n.7 (5th Cir. 2016) (quoting William V. Dorsaneo, III, *The Enigma of Standing Doctrine in Texas Courts*, 28 Rev. Litig. 35, 65 (2008)). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome, whereas the issue of capacity is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate." *Stanissis v. DynCorp Int'l LLC*, No. 3:14-CV-2736-D, 2017 WL 3279148, at *5 (N.D. Tex. Aug. 2, 2017) (internal quotation marks omitted) (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005)). Notably, the Fifth Circuit also stated in *Rideau* that "questions of standing [are] properly raised in a Rule 12(b)(1) motion [and] questions about capacity . . . are . . . better suited for a Rule 12(b)(6) motion." 819 F.3d at 160. Although the defendants seek dismissal of all claims brought by the minor-plaintiffs under Rule 12(b)(1), because the issue here is one of capacity, the Court applies the Rule 12(b)(6) standard. *See id.*

[4] Notably, both minor-plaintiffs will turn 18 sometime in 2025. Dkt. No. 28-1 at 11 n.4. At that time, any defect in capacity will be cured and they can be substituted as the proper plaintiffs. *See* Fed. R. Civ. P. 17(a)(3).

*Cornerstone Hosp. of W. Monroe, LLC*, 589 F. App'x 688, 691 (5th Cir. 2014)). And a minor plaintiff is only unrepresented if his or her legal representative has conflicting interests or refuses to act. *Adkison v. Polaris Indus., Inc.*, No. 3:18-CV-2014, 2020 WL 137226, at *3 (N.D. Tex. Jan. 13, 2020).

As the parties point out, although the plaintiffs do not expressly assert representative capacity in their complaint, the defendant does not cite to any binding authority that requires a parent to use particular wording when suing on behalf of a minor. Under Texas law, a parent may represent his or her child in a legal action. Tex. Fam. Code § 151.001(a)(7). And the plaintiffs make clear in their response to the motion to dismiss that the parents are asserting claims both individually and as next friends of the minors. *See* Dkt. No. 28-1 at 8–9, 11; *see also* 2 McDonald & Carlson Tex. Civ. Prac. § 8:7 (2d. ed.) ("[T]he capacity of the parties may be gathered from the petition and the evidence, where necessary, and judgment rendered accordingly."). Because the Court dismisses the parent-plaintiffs' personal claims, only the minors' claims remain, and there is no conflict of interest that would prevent the parent-plaintiffs from proceeding in a representative capacity. *Cf. Philips v. Honda Motor, Co.*, No. 3:13-CV-1431, 2013 WL 12128781, at *2 (N.D. Tex. Oct. 30, 2013) (finding a conflict of interest did not exist between parent and child when dismissal of father's claims "would effectively remove him as a competing claimant for any money obtained in the action").

In sum, the Court dismisses with prejudice any individual claims under Title IX or Section 1983 brought by April and John Harrower and Melanie and Jeromy John Hicks. Additionally, the Court determines that April and John Harrower may assert J.H.1's Title IX and Section 1983 equal-protection claims in a representative capacity. Likewise, the

– 18 –

Court determines that Jeromy John Hicks may assert J.H.2's Title IX and Section 1983 equal-protection claims in a representative capacity. Because the plaintiffs do not assert that Melanie Hicks is a parent or legal guardian of J.H.2,[5] the Court dismisses all claims brought by Melanie Hicks, whether in a personal or representative capacity.

### c.   The Court dismisses the plaintiffs' claim for injunctive relief.

Next, the parties dispute whether the plaintiffs have alleged a sufficient ongoing or imminent injury to prevent dismissal of their request for a permanent injunction. The Court concludes that the plaintiffs have not sufficiently alleged an injury in fact and, thus, lack standing to seek an injunction.

To have Article III standing, a plaintiff must show, among other requirements, an injury in fact. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). And "[t]o be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) 'concrete and particularized,' not abstract; and (3) 'actual or imminent, not conjectural or hypothetical.'" *Stringer*, 942 F.3d at 721 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). A party seeking an injunction or other "forward-looking relief . . . must face 'a real and immediate threat of repeated injury.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "The threat of future injury must be 'certainly impending'; mere allegations of possible future injury will not suffice." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1461 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

---

[5] *See* Dkt. No. 1 ¶ 5 (identifying Melanie Hicks as J.H.1's "stepmother").

– 19 –

Furthermore, "allegations of past harm cannot establish standing for a request for prospective relief." *James*, 86 F.4th at 1081 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). In *Lyons*, the Supreme Court stated that whether a plaintiff who had previously been subjected to a chokehold during a traffic stop had "standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Lyons*, 461 U.S. at 105. Ultimately, the Supreme Court found that the plaintiff's prior injury "[did] nothing to establish a real and immediate threat" that he would suffer a similar injury in the future. *Id.*

The plaintiffs request a permanent injunction that essentially orders all defendants to refrain from unlawful discrimination, retaliation, and harassment, refrain from violating Title IX, and refrain from depriving the plaintiffs of their constitutional rights. *See* Dkt. No. 1 ¶ 171. The plaintiffs argue that J.H.1 "remains subject to the dangers" created by the defendants because of his continued enrollment in EISD. Dkt. No. 28-1 at 11. According to the plaintiffs, the defendants' deliberate indifference to the sexual misconduct and hazing that occurred during the 2022–2023 and 2023–2024 basketball seasons creates the ongoing injury of a "hostile educational environment[] where traditions of sexual hazing can thrive and be passed on from year to year." *Id.* at 12. But the fear or possibility that the alleged sexual misconduct will occur among members of future basketball teams made up of different individuals than the ones involved in the sexual misconduct against J.H.1 falls far short of the threat of an imminent and particularized injury. Additionally, the future injury must be "potentially suffered by the plaintiff, not someone else." *Stringer*, 942 F.3d at 721. Beyond general allegations that J.H.1 is subject to the "dangers" of a hostile educational environment, the plaintiffs do not allege a concrete, future injury that J.H.1 will suffer.

$-20-$

Additionally, the plaintiffs allege J.H.1 continues to suffer retaliation because the defendants prohibited him from speaking at graduation. However, as discussed *infra*, Motion for Preliminary Injunction § 3.B, EISD has reversed its initial determination and will allow J.H.1 to give a valedictory address. Accordingly, the plaintiffs cannot show an ongoing injury based on these alleged facts. Moreover, the conduct sought to be enjoined—future instances of discrimination and retaliation—is already prohibited by law.

Accordingly, the Court concludes that the plaintiffs have not alleged facts that satisfy the injury-in-fact requirement of standing and dismisses their request for injunctive relief.

### d.     The Court dismisses the Title IX claims against the individual defendants in their official capacities.[6]

The parties next dispute whether the individual defendants can be sued in their official capacities for violation of Title IX. The defendants assert that these claims are redundant with the claims against EISD, and the Court agrees. Likewise, the Court determines that the plaintiffs' Section 1983 claims against the individual defendants in their official capacities are essentially claims against EISD.

"Title IX reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). The Supreme Court has long-recognized that, absent Eleventh Amendment immunity concerns,

---

[6] Notably, the plaintiffs make inconsistent statements about whether the individual defendants are sued in their official or personal capacities. They state in their response that they "only pursue their claims against the [i]ndividual [d]efendants in their official capacities," Dkt. No. 28-1 at 7 n.1, but then seek injunctive relief against the individual defendants in their individual capacities, *id.* at 13. But because the plaintiffs affirmatively state they are not suing the individual defendants in their individual capacities and they lack standing to seek injunctive relief, the Court evaluates the claims against the individual defendants as official-capacity claims.

– 21 –

"official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.5 (1978). Thus, because official-capacity suits against school employees are treated as suits against the school, in this suit, the "claims against the [i]ndividual [d]efendants in their official capacities are simply a reformulation of [the plaintiffs'] claims against [EISD]." *Goins v. Hitchcock Indep. Sch. Dist.*, 191 F. Supp. 2d 860, 868 (S.D. Tex. 2002), *aff'd*, 65 F. App'x 508 (5th Cir. 2003); *cf. Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 F. App'x 958, 963 (5th Cir. 2020) (dismissing official-capacity Section 1983 claims against a school employee as redundant of the claims brought against the school).

The plaintiffs ask the Court to exercise its discretion and allow the Title IX claims to proceed against the individual defendants because any prospective injunctive relief would need to reach the conduct of the individual defendants. *See* Dkt. No. 28-1 at 13–14. However, because the plaintiffs lack standing to seek injunctive relief, this argument for keeping the individual defendants in the suit is moot.

Accordingly, because Title IX does not authorize suit against the individual defendants and any official-capacity claims are redundant of those asserted against EISD, the Court dismisses with prejudice the Title IX claims asserted against the individual defendants. Similarly, because the plaintiffs assert they are bringing only official-capacity claims against the individual defendants, the Court will treat the equal-protection claims

– 22 –

against the individual defendants, "in all respects other than name," as against EISD.

*Kentucky*, 473 U.S. at 166.

    Thus, after weeding through the somewhat unclear allegations as to which parties are

suing which defendants and in what capacity, the Court turns to whether the plaintiffs have

alleged facts that would allow the Court to draw the plausible inference that EISD has

violated Title IX or the Fourteenth Amendment's Equal Protection Clause.

### iii.    Failure to State a Claim

#### a.    The Court denies the motion to dismiss the plaintiffs' Title IX claims against EISD.

    The plaintiffs allege two distinct Title IX claims: (1) EISD was deliberately

indifferent to the known sexual harassment of J.H.1 and J.H.2; and (2) EISD has an official

policy or custom of failing to protect male students from sexual harassment and hazing in

school sports.  The Court evaluates each claim in turn.

##### 1.    The plaintiffs have sufficiently pled a Title IX post-reporting deliberate-indifference claim.

    Under Title IX, school districts "are properly held liable in damages only where they

are deliberately indifferent to sexual harassment, of which they have actual knowledge, that

is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of

access to the educational opportunities or benefits provided by the school."  *Davis*, 526 U.S.

at 650.  Here, the parties dispute whether the plaintiffs have sufficiently pled facts that the

school district acted with deliberate indifference.

    Deliberate indifference is a high bar; mere negligence is not enough.  *Sanches v.*

*Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011).  "Officials may

avoid liability under a deliberate indifference standard by responding reasonably to a risk of

harm, 'even if the harm ultimately was not averted.'" *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (cleaned up) (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)). "The Supreme Court has stated that 'courts should refrain from second-guessing the disciplinary decisions made by school administrators.'" *Id.* at 411 (quoting *Davis*, 526 U.S. at 648). "School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

Additionally, when evaluating whether a district took sufficient action in response to reports of peer-on-peer harassment allegations, the Court must evaluate "the reasonableness of a district's responses [to separate allegations of harassment] in light of the severity of [each allegation of] harassment. *Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 361 (5th Cir. 2022). In *Menzia*, the Fifth Circuit noted that a court must evaluate a district's different responses to different allegations as a whole and, even if "relatively weak responses to harassment" are "concerning," *id.* at 361 (quoting *Fennell*, 804 F.3d at 44), they may not be "clearly unreasonable in light of the overall response." *Id.* However, "[a] complete failure to act is an obvious case of deliberate indifference." *Id.* at 363.

District courts in Texas have found that, even if a district has responded to a plaintiff's allegations of harassment, additional allegations of a district's knowledge of and failure to respond to prior incidents of similar harassment allow the plaintiff's post-reporting deliberate-indifference claim to survive the dismissal stage. "[I]f a funding recipient has actual notice of an initially reported incident and fails to adequately respond, the recipient

can be held liable for making the victim 'vulnerable' to ongoing harassment." *Doe I ex rel. Doe II v. Huntington Indep. Sch. Dist.*, No. 9:19-CV-133, 2020 WL 10317505, at *7 (E.D. Tex. Oct. 5, 2020) (first citing *Davis*, 526 U.S. at 645; then citing *Karasek v. Regents of the Univ. of Ca.*, No. 15-CV-3717, 2015 WL 8527338, at *12–13 (N.D. Cal. Dec. 11, 2015)). In a factually similar case, a freshman in high school alleged that he was subjected to harassment and sexual assault by upperclassmen on his baseball team as part of a longstanding hazing tradition. *Stephenson ex rel. P.S. v. Brownsboro Indep. Sch. Dist.*, No. 6:21-CV-427, 2022 WL 3697965, at *1 (E.D. Tex. Aug. 25, 2022), *report and recommendation adopted by* 2022 WL 14151208 (Oct. 24, 2022). Although school administrators took action after the minor's parents reported a specific incident of harassment involving the minor that occurred on a bus ride to an away game, the plaintiffs alleged that the head baseball coach and certain school administrators knew of and failed to stop the hazing and sexual assault that occurred among members of the baseball team in prior years. *Id.* at *4. In viewing the alleged facts in a light most favorable to the plaintiff, the magistrate recommended that these allegations survive dismissal because the head coach, superintendent, and assistant superintendent had actual knowledge of prior events of harassment and failed to take action. *See id.* In affirming the recommendation, the district court found the coach's and administrators' "failure to respond to prior incidents as indicative of deliberate indifference." *Stephenson*, 2022 WL 13151208, at *3; *see also Doe I*, 2020 WL 10317505, at *8 (finding a principal's failure to report the sexual assault of a student that occurred prior to the plaintiff's alleged assault could indicate deliberate indifference).

Here, the defendants argue that the plaintiffs have not sufficiently alleged deliberate indifference because the district's response to J.H.1's and J.H.2's reports of harassment was

– 25 –

not clearly unreasonable. In response to the plaintiffs' complaints to administration on
January 18 and 19, 2024, EISD "[took] steps to investigate the situation" beginning on
January 18, separated the alleged aggressors by placing them in DAEP for two weeks,
"permit[ted] the criminal investigation to proceed without interference," and hired an
external investigator for the plaintiffs' formal Title IX complaints within eight business days
of the complaints. Dkt. No. 25 at 24–25. The district asserts that this action "forecloses a
finding of deliberate indifference" and that this claim should thus be dismissed. *Id.* at 25.
And were these the only facts alleged about the district's actual knowledge of and response
to the alleged harassment, this would likely be the correct conclusion, regardless of the
actual effectiveness of the district's remediation. *See Fennell*, 804 F.3d at 410. However, the
plaintiffs do not paint the same clear-cut picture of immediate responses to all reports of
harassment.

First, the plaintiffs allege that the coaching staff and possibly the school
administration had actual knowledge of the "tradition of sexual assault and hazing" that
occurred during the prior school year, but they failed to take action to stop it. Dkt. No. 1
¶¶ 28–31. The plaintiffs also allege that the coaching staff observed the players "hitting the
[genitals] of another boy to embarrass, demean, and hurt him . . . constantly during
practices" with only "occasional[] correction" by the coaches. *Id.* ¶ 54. Further, the
aggressors "threatened sodomy against J.H.1 in front of [EISD] coaches and staff." *Id.*
¶ 57. And, most importantly, the plaintiffs allege that "[d]espite [EISD] coaches and staff
hearing sexual threats, [EISD] and their staff did nothing to correct or stop such behavior."
*Id.* ¶ 60. Finally, the plaintiffs do not allege only a botched investigation or inadequate
response or disciplinary measures. Instead, they assert that EISD and members of its staff,

– 26 –

including Superintendent Williams, Principal Bramlett, and Athletic Director Morton, "*undermined and deliberately subverted*" the Title IX investigations by, in part: (1) knowingly failing to follow Title IX requirements and school policy, Dkt. No. 1 ¶ 77–81 (emphasis in original); (2) lying about the disciplinary measures taken against the aggressors during the external Title IX evaluation, *id.* ¶ 86; (3) providing false documentation to other school districts to facilitate the aggressors' acceptance into other academic and athletic programs, *id.* ¶ 13; and (4) allowing one of the aggressors into a gym where J.H.1 and J.H.2 were located despite knowing that the aggressor was not allowed, *id.* ¶¶ 96–97. *See also* Dkt. No. 28-1 at 20.

Based on the allegations as a whole, the Court concludes that, at the motion-to-dismiss stage, the plaintiffs have sufficiently alleged a post-reporting deliberate-indifference claim. Setting aside the actions of the district after the plaintiffs' complaints in January 2024, the plaintiffs allege actual knowledge and a complete lack of action by the district in response to known sexual harassment and hazing that occurred among members of the basketball team during the prior school year. Regardless of whether the plaintiffs can ultimately prove this allegation, it is sufficient at the motion-to-dismiss stage to allege deliberate indifference because *Davis* requires, at the least, that "the [district] must merely respond." *Davis*, 526 U.S. at 649; *cf. Baker v. Onalaska Indep. Sch. Dist.*, No. 2:08-CV-406, 2009 WL 3157406, at * 2 (E.D. Tex. Sept. 29, 2009) (stating that, although the student did not allege that her individual complaint and the district's response constituted actual notice and deliberate indifference, her allegation that the district had actual, prior knowledge of a teacher's propensity to assault students and failed to act sufficed to allege deliberate indifference). The plaintiffs also allege that the district intentionally subverted the

– 27 –

investigation into their reports of harassment, failed to report the alleged sexual assault of J.H.1 to his parents, and knowingly provided false information during an investigation, all of which, taken together and viewed in a light most favorable to the plaintiffs, could render the district's "response, or lack thereof 'clearly unreasonable.'" *Doe I*, 2020 WL 10317505, at *8 (quoting *Davis*, 526 U.S. at 649) (concluding that similar allegations of a failure to report an assault to a student's parents and a failure to report prior incidents of harassment survived dismissal).

Thus, although the district undisputedly took action in response to the plaintiffs' individual complaints about the harassment suffered by J.H.1 and J.H.2, because the plaintiffs also allege a complete lack of action to prior, similar incidents of harassment and intentional dishonesty during the Title IX investigation, the Court concludes that the plaintiffs have stated a Title IX claim for post-reporting deliberate indifference.

### 2. The plaintiffs have sufficiently pled a Title IX official-policy claim.

The Supreme Court has long held that a plaintiff may assert a Title IX claim based on an educational institution's official policy of intentional discrimination. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Instead of alleging post-reporting deliberate indifference, a Title IX official-policy claim often alleges that, prior to the plaintiff's report of sexual misconduct, "the defendant had an official policy or custom that created a heightened risk of sexual assault." *Owens v. La. State Univ.*, 666 F. Supp. 3d 561, 588 (M.D. La. 2023). Although the Fifth Circuit has not expressly recognized such a "heightened-risk" claim, a recent opinion indicates that it "has not foreclosed on the possibility that such a claim may be cognizable in the context of student-on-student sexual assault allegations." *Id.*; *see also Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342

– 28 –

(5th Cir. 2022) (discussing a pre-reporting claim of deliberate indifference to a known heightened risk of sexual assault without foreclosing the possibility of a pre-reporting claim based on a heightened risk of sexual assault due to a defendant's official policy); *cf. Poloceno v. Dall. Indep. Sch. Dist.*, 826 F. App'x 359 (5th Cir. 2020) (declining to recognize an official-policy heightened-risk claim because the facts of the case did not involve student-on-student sexual harassment). And, in fact, district courts in the Fifth Circuit have recognized such a claim. *See, e.g., Doe v. Beaumont Indep. Sch. Dist.*, 727 F. Supp. 3d 589, 616 (E.D. Tex. 2024) ("The [c]ourt therefore allows Plaintiffs' heightened risk claim and turns to addressing its merits."); *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022) ("Cases within the Fifth Circuit that have recognized Title IX pre-assault claims are based on allegations that the defendants failed to address sexually hostile environments after receiving reports of sexual assault."); *Doe No. 1 v. Tex. Christian Univ.*, 2021 WL 12289429, at *10 (N.D. Tex. Jan. 12, 2021) (allowing an official-policy claim based on a university's inaction prior to the plaintiff's report of assault to survive dismissal); *but see Doe v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-814, 2024 WL 1329917, at *8 (E.D. Tex. Mar. 27, 2024) (relying on *Poloceno* for the proposition that "Plaintiffs' heightened risk theory is not available in the Fifth Circuit").

Likewise, the Fifth Circuit has not delineated specific elements for a pre-reporting official-policy claim. The defendants argue that "the proper test is not whether [EISD] knew of or is responsible for the actions of others, but . . . whether [EISD] intended to treat [males] differently on the basis of their sex." *Pederson v. La. State Univ.*, 213 F.3d 858, 882 (5th Cir. 2000); *see also* Dkt. No. 25 at 27. While the defendants are correct that an official-policy plaintiff must prove intentional discrimination, this does not encompass the

entire legal standard for a pre-reporting official-policy claim involving allegations of student-on-student sexual harassment. A pre-reporting official-policy claim typically "involve[s] allegations that an entity . . . has an official policy that fails to adequately respond to complaints of sexual violence or assault." *Doe No. 1*, 2021 WL 12289429, at \*9. "The courts in those cases analyze[] the entity's liability by looking at the action or inaction taken by the entity prior to the plaintiff's report of assault." *Id.* (citing *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 775 (W.D. Tex. 2018)).

The official policy need not be a "formal institutional decision," but can be a custom tantamount to an official policy that allegedly caused or created a heightened risk of sexual assault. *See Doe 12*, 336 F. Supp. 3d at 779–80. For example, in *Doe 12*, the plaintiffs alleged that Baylor University—through its "staff[] and highest officers"—discouraged sexual assault victims from reporting, misled sexual assault victims about their reporting options and rights under Title IX, failed to sufficiently investigate reports of sexual assault, failed to ensure that sexual assault victims who reported would not be subjected to additional harassment, and reported that Baylor had no sexual assaults on campus over a period of four years despite actual knowledge of multiple reports of sexual assault. *Id.* at 782–83. In declining to dismiss the plaintiffs' official-policy claim, the court found that "[t]hese alleged facts, construed as true, 'raise a right to relief above the speculative level' that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault constituted an official policy of discrimination that created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain." *Id.* at 783 (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)).

Similarly, the Court determines that J.H.1 and J.H.2, at this stage of the litigation, have sufficiently pled an official-policy claim against EISD. The plaintiffs allege the following facts with respect to EISD's knowledge of sexual misconduct and hazing on the boys' basketball team and EISD's response to such knowledge prior to J.H.1's and J.H.2's report of sexual assault:

- EISD has a "history of sexually based misconduct and incidents occurring" among members of the varsity boys' basketball team that the coaches were aware of, *id.* ¶ 53;

- EISD's coaching staff and possibly the administration knew of the "good luck charm tradition" occurring on the varsity boys' basketball team by, at the latest, 2022, Dkt. No. 1 ¶ 29;

- "[a]ll school leaders failed to correct this inappropriate tradition of sexual assault and hazing" during the 2022–2023 basketball season and, as a result, it continued to occur during the 2023–2024 basketball season, *id.* ¶ 31;

- EISD varsity boys' basketball coaches witnessed "team members hitting the [genitals] of another boy to embarrass, demean, and hurt him . . . constantly during practices," *id.* ¶ 54;

- EISD varsity boys' basketball coaches "occasionally corrected" these incidents in practice but failed to take further action, *id.* ¶ 55;

- EISD varsity boys' basketball coaches and staff witnessed basketball team members verbally threaten sodomy against J.H.1 and make other "sexual threats" against both J.H.1 and J.H.2 during bus trips to away games, but they failed to "correct or stop such behavior," *id.* ¶¶ 57–60;

– 31 –

- EISD allowed a "culture of sexual violence and misconduct . . . to fester" within the basketball team, *id.* ¶ 61;

- During a meeting with Melanie Hicks in January 2024, Superintendent Williams verbally acknowledged that "the hazing and sexual misconduct that occurred [among members of the basketball team] was a 'systemic problem,'" *id.* ¶ 71;

- EISD knew about the "systemic problem related to sexual misconduct and hazing" but did not take action to correct it or provide proper oversight by coaches or resource security officers at away games and, consequently, the sexual misconduct and hazing continued, *id.* ¶¶ 126–30; and

- Based on these alleged facts, EISD has "official policies and customs to discriminate against male students in the athletic program," which resulted in the assault of J.H.1 and J.H.2, *id.* ¶¶ 165–66.

The Court concludes that these allegations, taken as true and viewed in a light most favorable to the plaintiffs, "state 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship*, 892 F.3d at 726. In short, the plaintiffs allege that the coaching staff and administration were aware of incidents of sexual assault and hazing on the varsity boys' basketball team during the 2022–2023 basketball season and also witnessed student-on-student sexual assault and verbal threats during practices and bus rides but failed to take action. Such allegations are sufficient to allege that EISD had a policy or custom of allowing sexual misconduct and hazing to occur on the varsity boys' basketball team that constitutes an official policy of discrimination against only male athletes and, consequently, created a heightened risk of discrimination against the plaintiffs on the basis of their sex. *See*

– 32 –

*Doe 12*, 336 F. Supp. 3d at 782–83; *Doe No. 1*, 2021 WL 12289429, at \*10. Whether the plaintiffs can prove these allegations as to the timing and conduct of EISD staff and coaches is an inquiry better resolved at the summary-judgment stage. *See Doe No. 1*, 2021 WL 12289429, at \*10.

Therefore, the Court denies the defendants' motion to dismiss the Title IX claims brought against EISD by the parent-plaintiffs as next friends of the minor-plaintiffs.

> **b.     The Court dismisses without prejudice the equal-protection claims against the individual defendants in their official capacities.[7]**

Section 1983 provides a cause of action for plaintiffs when their constitutional or federal statutory rights are deprived by any "person" acting "under color of any statute, ordinance, regulation, custom, or usage" of the State. 42 U.S.C. § 1983. "A [S]ection 1983 complaint must plead specific facts and allege a cognizable constitutional violation in order to avoid dismissal for failure to state a claim." *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 678 (5th Cir. 1988). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). And "[i]t is well-settled that '§ 1983 suits based on the Equal Protection Clause' are 'available to plaintiffs alleging unconstitutional gender discrimination in schools.'"[8] *Ruvalcaba v. Angleton*

---

[7] Because the plaintiffs state that they are not suing the individual defendants in their personal capacities, the Court need not evaluate the parties' arguments regarding the individual defendants' entitlement to qualified immunity. *See Kentucky*, 473 U.S. at 166–67 (stating that personal immunity defenses are unavailable in official-capacity suits).

[8] As discussed *supra*, Motion to Dismiss § 2.B.i.e., the Court treats the official-capacity equal-protection claims against the individual defendants as claims against EISD.

*Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at \*3 (5th Cir. Feb. 4, 2022) (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009)).

Similar to a Title IX official-policy claim, "[a] plaintiff stating a . . . claim via § 1983 for violation of the Equal Protection Clause by a school district . . . must show that the harassment [and resulting constitutional violation] was the result of municipal custom, policy, or practice." *Fitzgerald*, 555 U.S. at 257–58 (citing *Monell v. N.Y.C. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (stating that a Section 1983 plaintiff alleging municipal liability must prove that an official custom or policy was the "moving force" behind a constitutional violation). A Section 1983 equal-protection plaintiff must also prove that the "official policy" was promulgated by a "municipal policymaker." *Doe*, 615 F. Supp. 3d at 495 (quoting *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019)). Alternatively, a policy may be a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

Furthermore, a "violation of equal protection occurs . . . when [a state actor] treats someone differently than others similarly situated." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988). In this case, the plaintiffs must allege that discrimination against males was a "motivating factor" or moving force behind that alleged constitutional violation. *See Beltran v. City of El Paso*, 367 F.3d 299, 305 (5th Cir. 2004); *Piotrowski*, 237 F.3d at 578. The recent, unpublished Fifth Circuit opinion in *Ruvalcaba* indicates that the plaintiffs' equal-protection allegations do not "clear this bar." 2022 WL 340592, at \*3. In *Ruvalcaba*, the

– 34 –

Fifth Circuit found that allegations that a school principal did not appropriately investigate allegations of sexual assault or appropriately discipline the aggressor, and that he forced the victim to reenact the assault "[did] not amount to an equal-protection violation because they [were] not accompanied by factual allegations suggesting that [the principal] treated [the female plaintiff] less favorably than he would have treated a male student under similar circumstances." *Id.* An equal-protection plaintiff must prove more than disparate treatment—he must prove discriminatory intent. *Id.*; *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212–13 (5th Cir. 2009) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)) ("To maintain an equal protection claim, a plaintiff typically alleges that he 'received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'"); *cf. Doe*, 727 F. Supp. 3d at 609–20, 628–29 (evaluating both Title IX and equal-protection claims and dismissing the equal-protection claim for failure to allege facts that show discriminatory intent).

        The defendants contend that the plaintiffs offer only conclusory allegations that fail to state a plausible constitutional violation. More specifically, the defendants argue that the plaintiffs "have not identified any similarly situated individual who was treated differently" or that the "allegedly unequal treatment stemmed from a discriminatory intent." Dkt. No. 25 at 29. The Court agrees. Even viewing the alleged facts in a light most favorable to the plaintiffs, the plaintiffs have failed to sufficiently state an equal-protection claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of stating a plausible claim to relief. *Iqbal*, 556 U.S. at 678. Here, the plaintiffs generally state that the defendants "have official policies and customs to discriminate" and that the defendants' "treatment" of the minor-plaintiffs and

– 35 –

"actions" were discriminatory. *See* Dkt. No. 1 ¶¶ 165, 168–70. However, the plaintiffs fail—in both their factual allegations and assertion that the minor-plaintiffs received unequal treatment—to allege that similarly situated female athletes received or would have received different treatment or that the district's actions were motivated by a discriminatory animus against males. *See generally* Dkt. No. 1. Accordingly, the Court concludes that the plaintiffs have failed to state a Section 1983 claim for violation of the Equal Protection Clause and dismisses this claim without prejudice.

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The Rule 15 standard favors granting leave to amend, and a district court must have a "substantial reason" for denying leave. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). In deciding whether to allow amendment of the complaint, a district court may consider factors such as "undue delay, [the movant's] bad faith or dilatory motive, repeated failures to cure deficiencies by amendments . . . , undue prejudice to the opposing party . . . , and futility of the amendment." *Id.* (quoting *Jones*, 427 F.3d at 994). Because there is no indication of undue delay, bad faith, repeated failures to cure, or prejudice to the defendants, the Court grants the plaintiffs leave to amend their complaint and attempt to cure the deficiencies in their equal-protection claims.

**3.    Motion for Preliminary Injunction**

The Court denies as moot the Harrower plaintiffs' motion for a preliminary injunction.

– 36 –

### A.    Rule 65 Legal Standard

Federal Rule of Civil Procedure 65(a) authorizes federal courts to issue preliminary

injunctions. "A preliminary injunction is an extraordinary remedy," requiring a "clear

showing" that plaintiffs are entitled to such relief. *Winter v. Nat'l Res. Def. Council, Inc.*, 555

U.S. 7, 22, 24 (2008). The purpose of a preliminary injunction is to preserve the status quo

and prevent irreparable injury until the court renders a decision on the merits. *Canal Auth. of*

*Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

> In order to obtain a preliminary injunction, a movant must demonstrate (1) a
> substantial likelihood of success on the merits; (2) a substantial threat of
> irreparable harm if the injunction does not issue; (3) that the threatened injury
> outweighs any harm that will result if the injunction is granted; and (4) that the
> grant of an injunction is in the public interest.

*Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (citing *Byrum v. Landreth*, 566 F.3d

442, 445 (5th Cir. 2009)). A court deciding whether to enter a preliminary injunction

evaluates each factor in turn, but in the final analysis, "[l]ikelihood of success and

irreparable injury to the movant are the most significant factors." *Louisiana v. Becerra*, 20

F.4th 260, 262 (5th Cir. 2021) (citing *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014)).

### B.    Analysis

In light of EISD's decision to allow J.H.1 to speak at graduation, the Court denies

the Harrower plaintiffs' motion for a preliminary injunction. In their response, the

defendants argue that the plaintiffs can no longer establish any of the required elements

warranting a preliminary injunction and that the Court now lacks jurisdiction to grant such

injunction because no case or controversy remains with respect to the graduation speech.

*See generally* Dkt. No. 40. In short, the defendants argue that their decision to allow J.H.1 to

speak at graduation renders the motion for preliminary injunction moot. *Id.* at 6. The

– 37 –

plaintiffs agree, but request the motion be denied as moot without prejudice to refiling if new allegations of retaliatory conduct arise. *See* Dkt. No. 41.

"The Supreme Court has defined mootness as 'the doctrine of standing set in a timeframe. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Roberts v. Haragan*, No. 5:03-CV-140, 2004 WL 530373, at *1 (N.D. Tex. Mar. 17, 2004) (Cummings, J.) (cleaned up) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). If an event occurs during the pendency of a case or appeal that eliminates an actual controversy between the parties, the case or appeal is moot. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). Likewise, if the issue sought to be remedied by a preliminary injunction is no longer "live" or "it [is] impossible to grant any effectual relief," the request for a preliminary injunction becomes moot. *See id.*; *see also Haragan*, 2004 WL 530737, at *1 (denying as moot a motion to enjoin a university from enforcing policies regarding a student's on-campus speech after the university proposed less restrictive interim policies and was working to develop new permanent policies).

Here, the Harrower plaintiffs requested a preliminary injunction ordering the defendants "to allow J.H.1 to speak at the May 23, 2025[,] Graduation as Valedictorian utilizing preapproved remarks." Dkt. No. 31 at 2. In its March 20 letter, EISD approved J.H.1 to give the valedictory address. Dkt. No. 40 at 3. The content of J.H.1's speech must comply with the Board's policy regarding student graduation speeches and the EISD Student Code of Conduct, and J.H.1 must submit the speech to the administration for prior approval. *Id.* at 3–4. In short, without deciding whether the threat of irreparable injury ever

existed, because J.H.1 is no longer banned from speaking at graduation, no threat of irreparable injury exists currently. And the parties agree that the motion should be denied as moot. *See* Dkt. Nos. 39; 41. Thus, the Court determines that J.H.1 has already obtained the relief requested and denies the motion for preliminary injunction as moot. *See Roberts*, 2004 WL 530373, at *1 ("[T]here is no real imminent danger that Plaintiff will suffer any harm under the proposed implementation of the interim policies and . . . Plaintiff's Motion for Preliminary Injunction is moot."). Moreover, the Court denies the motion without prejudice to refiling with the understanding that any subsequent motion for a preliminary injunction must be based on allegations of new discriminatory or retaliatory conduct.

**4.    Conclusion**

In sum, the Court grants in part and denies in part the defendants' motion to dismiss and denies the Harrower plaintiffs' motion for a preliminary injunction.

First, because the plaintiff concedes dismissal of certain claims, the Court dismisses with prejudice all claims against the individual defendants in their personal capacities and any claim for punitive or pure emotional-distress damages. Next, the Court concludes that the parent-plaintiffs lack standing to bring individual claims under Title IX or Section 1983 and dismisses with prejudice all of their personal claims. However, the Court concludes that the parent-plaintiffs have standing to assert Title IX and Section 1983 claims as next friend of the minor-plaintiffs and declines to dismiss these claims, with the caveat that J.H.2's stepmother, Melanie Hicks, does not have standing to assert such claims. Further, the Court dismisses the plaintiffs' claim for injunctive relief for failure to meet the injury-in-fact requirement of Article III standing. Finally, because the plaintiffs clarify that they are only suing the individual defendants in their official capacity and any official-capacity Title

IX claims against the individual defendants are redundant of the Title IX claims against EISD, the Court dismisses with prejudice the Title IX claims against the individual defendants. Likewise, the Court treats the Section 1983 equal-protection claims against the individual defendants in their official capacities as claims against EISD.

Next, in evaluating whether the plaintiffs have stated a claim upon which relief may be granted, the Court denies the motion to dismiss as to the Title IX claims and dismisses without prejudice the Section 1983 equal-protection claims. More specifically, the Court concludes that April and John Harrower, as next friend of J.H.1, and Jeromy John Hicks, as next friend of J.H.2, have sufficiently pled Title IX post-reporting deliberate-indifference claims and pre-reporting official-policy claims against EISD. However, they have failed to sufficiently plead Section 1983 equal-protection claims against the individual defendants in their official capacities.

Thus, the Court dismisses with prejudice the parent-plaintiffs' individual claims, any claims for punitive and pure emotional-distress damages, any Title IX claims against the individual defendants in their personal capacities, and the minor-plaintiffs' claims for injunctive relief. The Court dismisses without prejudice the minor-plaintiffs' equal-protection claims and grants leave to amend. Finally, the Court denies the motion to dismiss with respect to only the minor-plaintiffs' Title IX claims against EISD.

Accordingly, the Court dismisses the following individuals from the suit:

- the plaintiff, Melanie Hicks, and
- the following defendants: Jeremy Williams, Mary Jones, Adam Bramlett, Brent Kirkland, Donald Cate, John Bird, Kimberly Fullen, Kalli Stacy, David Hatton, and Jim Moylan, Jr.

Finally, in light of EISD's decision to allow J.H.1 to speak at graduation, the Court

denies as moot the plaintiff's motion for a preliminary injunction.

So ordered on May 27, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE